IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RODNEY G. PREWITT,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **WALGREENS COMPANY,** | : | No. 12-6967 |
| Defendant. | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                           **December 2, 2013**

  This is an employment discrimination case brought by plaintiff Mr. Prewitt against defendant Walgreens. The plaintiff was employed as a pharmacist with Walgreens and currently has two cases pending which are based upon virtually identical facts. The plaintiff moved to amend his complaint in his initial filing, Civil Action No. 11-cv-02393, which I denied with prejudice. The plaintiff then filed an entirely new action, Civil Action 12-cv-6967, which included a claim similar to one asserted in his first action and amended complaint.[1] The two cases assert an age discrimination and wrongful discharge claim against Walgreens following the plaintiff's reassignment and termination, allegedly over his strong opposition to administering flu vaccinations. For the reasons set forth below, I will dismiss the plaintiff's new action.

---

[1] The plaintiff's original complaint in 11-cv-02393 asserts a "Wrongful Discharge in Violation of Pennsylvania Public Policy" claim based only on 49 Pa. Code § 27.103. See Doc. No. 1. The plaintiff's proposed amended complaint asserted a "Wrongful Discharge in Violation of Pennsylvania Public Policy" based on 49 Pa. Code § 27.103 and the Pennsylvania Constitution. See Doc. No. 26. The plaintiff's current action 12-cv-6967 asserts a "Wrongful Suspension in Violation of Pennsylvania Public Policy" based on the Pennsylvania Constitution alone. See Doc. No. 1, 12-cv-6967.

1

I.   **BACKGROUND**[2]

Beginning August 21, 2006, the plaintiff was employed at Walgreens as a full-time pharmacist in the Oxford, PA store, working either the day shift or evening shift. On May 24, 2010, Walgreens disseminated an Immunizer Policy, executed by John G. Hipps, which required all Walgreens pharmacists to obtain CPR certifications, complete a certificate program, and become certified immunizers by September 1, 2010.[3]

The plaintiff made Walgreens aware that he did not want to administer flu vaccinations to Walgreens customers as he felt that administering "flu shots" would run contrary not only to his conscience, but also to his ethical obligations as a pharmacist.[4] The plaintiff advised Walgreens' management that he was opposed to administering flu vaccination shots under the Hipps' prescription because he had a very close friend who died from Guillain-Barre Syndrome (GBS) from a flu vaccine. He agreed to receive his certification, but sought similar accommodations that he had received in the past where Walgreens permitted him to avoid administering the vaccine.

In August 2010, the plaintiff was given a ten (10) hour overnight shift position in the York store for the month of September 2010. The plaintiff refused this offer as this schedule was a significant departure from the plaintiff's previous working hours, income,

---

[2] All facts incorporated herein are taken from the plaintiff's complaint in Civ. Action No. 12-cv-6967 (Doc. No. 1).

[3] The Immunizer Policy states that Walgreens would attempt "to provide reasonable accommodations [for] any pharmacist who provides medical certification of a condition that prevents him or her from performing immunization duties."

[4] The plaintiff believed, among other things, that the Informed Consent form regarding the potential dangers of the vaccine was unfairly drafted and he was ill-equipped to discuss the legal ramifications with patients.

and commute.[5]  The plaintiff was then placed into a non-paying floater position effective September 4, 2010 and had to exhaust his vacation time.

In December 2010, unbeknownst to the plaintiff, his medical and other benefits were terminated.[6]  The plaintiff remained under the impression, from his communications with Walgreens' corporate counsel, that he would return to his prior position "once the immunization season ended."  However, the plaintiff was not returned to his position.

During this time, the plaintiff alleges that Walgreens hired and/or transferred non-immunizing pharmacists into its Pennsylvania stores and permitted them to work despite their lack of immunization licensure.  The plaintiff states that his supervisor, Mr. Anderson, and Walgreens discriminated against him because of his religious beliefs and alleges wrongful suspension in violation of the Pennsylvania State Constitution.

## II.   PROCEDURAL HISTORY

The plaintiff filed his original action on April 6, 2011 (Prewitt I).[7]  The complaint alleged two causes of action: 1) age discrimination under the Age Discrimination and Employment Act (ADEA), and 2) a wrongful discharge claim in violation of Pennsylvania's Conscience Policy.[8]  After extensive discovery, the plaintiff filed a motion to amend his compliant on January 10, 2012 and a proposed new amended

---

[5] The plaintiff offered to work exclusively on the second shift during the 2010-11 flu immunization season to reduce the likelihood of having to turn away patients seeking flu vaccination shots.

[6] On December 18, 2010, the plaintiff filed a Charge of Discrimination with EEOC and PHRC based on age discrimination.

[7] Civil Action No. 11-cv-02393.

[8] PA Conscience Policy is embodied in 49 Pa Code §27.103.  This provision states that if a pharmacist raises concerns as to the administration of a drug, the owner of the pharmacy should devise a reasonable accommodation.

3

complaint on January 30, 2012, which added a considerable number of new claims.[9] This motion to amend was filed just days before defendant's motion for summary judgment was due. I granted in part and denied in part the plaintiff's motion to amend on the basis of undue delay, which would result in substantial prejudice to the defendant.[10] The plaintiff then filed this entirely new action (Prewitt II) just over two months after I issued my ruling on the motion to amend on December 12, 2012.[11]

In the new action, the plaintiff asserts a claim I declined to allow him to raise by amending the first action amend—the claim for wrongful discharge arising out of his conscience objection on the grounds that it was protected under Article I of the Pennsylvania Constitution. In my memorandum on the motion to amend, I found that this new theory could have been asserted in the original complaint and the proposed

---

[9] These claims included claims for religious and disability discrimination under Title VII (proposed new Count III); age, religious, and disability discrimination under the PHRA (proposed new Count IV); retaliatory discharge under the ADEA, Title VII, and the PHRA (proposed new Count V); and wrongful discharge in violation of public policy, relying upon the Pennsylvania Constitution (proposed new Count II).

[10] I granted in part and denied in part the plaintiff's motion to amend ordering:

1. Plaintiff's motion to amend the Complaint to include a claim of age discrimination under the PHRA is **GRANTED**;
2. Plaintiff's motion to amend the Complaint to include a claim for retaliatory discharge under the ADEA and the PHRA as it relates to the Plaintiff's claim of age discrimination is **GRANTED**;
3. Plaintiff's motion to amend the Complaint to include claims for religious and disability discrimination under the PHRA is **DENIED**;
4. Plaintiff's motion to amend the Complaint to include claims for religious and disability discrimination under Title VII is **DENIED**;
5. Plaintiff's motion to amend the Complaint to include a claim for wrongful discharge under the Pennsylvania Constitution is **DENIED**; and
6. Plaintiff's motion to amend the Complaint to include claims for retaliatory discharge under Title VII and the PHRA as it relates to Plaintiffs proposed claims of religious and disability discrimination is **DENIED**.

[11] Civil Action No. 12-cv-06967.

amendment at that stage would have prejudiced defendants.[12] The parties and the underlying facts in the two cases are identical.[13]

### III.   STANDARD OF REVIEW

---

[12] I went on to state,

> Considering whether this amendment would result in additional discovery, cost, and preparation, Cureton, 252 F.3d at 273, I find that it does. This new theory, which could have been asserted in the original complaint; the proposed amendment, at this stage, would prejudice Defendants. If the amendment were allowed, Defendants would be required to defend against (and take discovery relating to) an entirely new public policy argument, which differs considerably from the argument in the original Count II. The Court agrees with Defendant that this will have a substantial and prejudicial impact on Defendant's preparation and defense. See, e.g., Stallings ex rel. Estate of Stallings v. IBM Corp., No. 08-3121, 2009 U.S. Dist. LEXIS 81963, 2009 WL 2905471, at *17 (D.N.J. Sept. 8, 2009) ("Prejudice may result from an amendment where a party has to change tactics or case theories because of new claims.").

Prewitt v. Walgreens Co., 2012 U.S. Dist. LEXIS 137027, *39 (E.D. Pa. Sept. 25, 2012).

The plaintiff also contends that I found any delay was not improperly motivated. While that is correct with regard to some of the plaintiff's claims because the plaintiff's delay allegedly was due to a misunderstanding about a "phased" discovery agreement, I found that the plaintiff's "motives were different for proposed Count II" than they were for the other claims because "even if the Plaintiff's version of the phased discovery agreement [was] correct, discovery would have ended with respect to Count II in the original complaint." Therefore, with respect to the constitutional claim asserted in Prewitt I, I found that the plaintiff's delay was undue, his amendment was untimely, and he stated no viable reason for his delay in asserting the claim. Moreover, the amendment completely altered the scope of the original Count II and the delay would have a "substantial and prejudicial impact on Defendant's preparation and defense." Id. at 38-39.

[13] The proposed amendment to the complaint in Prewitt I and the complaint in Prewitt II have a number of similarities:

- Both quote Article I, Sections 1 and 3 of the Pennsylvania Constitution, and note that the Constitution "is a clear embodiment of Pennsylvania's public policy." Compare Prewitt II Compl. at ¶¶ 8-10 with Prewitt I proposed Am. Compl. at ¶¶ 13-15.
- Both use virtually identical language to describe the Walgreens Vaccination Standing Order Protocol and what is or is not incorporated therein. Compare Prewitt II Compl. at ¶ 11-13 with proposed Am. Compl. in Prewitt I at ¶ 90.
- Both use virtually identical language to allege that the plaintiff's opposition to the flu shot "found its genesis largely in the fact that he had a very close friend who died from Guillain-Barre Syndrome as a result of a flu vaccine." Compare Prewitt II Compl. at ¶¶ 46 and 58 with proposed Am. Compl. in Prewitt I at ¶ 28.
- Both use virtually identical language to allege that Walgreens was focused "not on the common health and welfare, but rather on its bottom line," and that Walgreens "inundated" the plaintiff with "propaganda" on "pushing the flu shots." Compare Prewitt II Compl. at ¶¶ 59-62 with proposed Am. Compl. in Prewitt I at ¶¶ 35-37.
- Both allege that "the very existence National Vaccine Injury Compensation Program [] demonstrates the very real risks associated with the administration of flu vaccines," and that the fact that Walgreens gives customers an information sheet and asks them to sign a standard waiver before receiving a flu shot proves the risks of the flu shot. Compare Prewitt II Compl. at ¶¶ 28-43, 48-53 with proposed Am. Compl. in Prewitt I at ¶¶ 29-33.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.[14] Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v.

---

[14] In deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). The court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. Id. The plaintiff has included a surveillance tape of the incident, which I have considered in my analysis of the motion to dismiss.

County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

## IV. DISCUSSION

### A. Wrongful Discharge in Violation of Pennsylvania Public Policy

Federal courts sitting in diversity must apply the substantive law of the state which governs the action. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). Whether a cause of action for wrongful termination exists in Pennsylvania is a question of law and, thus, can be decided under Rule 12(b)(6). Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir.1992). At-will employees typically do not have a wrongful discharge cause of action unless their firing violates a clear mandate of public policy. Geary v. U. S. Steel Corp., 456 Pa. 171, 185 (1974); Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 918 (Pa. 1989). For this reason, the public policy exception applies "only in the most limited of circumstances." Paul v. Lankenau Hospital, 569 A.2d 346, 348 (Pa. 1990)(quoting Clay, 559 A.2d at 918).

The plaintiff bases his claim for wrongful termination in this complaint solely on the theory that Article I of the Pennsylvania Constitution provides a basis for a "public policy exception" (to the at-will doctrine) warranting a wrongful discharge finding.[15]

---

[15] While the plaintiff asserts that both Sections 1 and 3 of the Pennsylvania Constitution provide a basis for an exception, I find no basis—legal or factual—for the plaintiff's assertion that his rights pursuant to Section 3, Religious Freedom, have been violated. Even if liberally construed, the facts alleged in the plaintiff's complaint are insufficient to support a religious freedom violation under Article I, Section 3 of the Pennsylvania Constitution. The plaintiff fails to allege any religion or sincere religious beliefs in his complaint, which would implicate Section 3. Although he alleges his administering flu vaccinations was against his "religious, moral, or ethical beliefs," the complaint clearly states the plaintiff advised Walgreens' management that he was opposed to administering flu vaccination shots under the Hipps' prescription because he had a very close friend who died from Guillain Barre Syndrome (GBS) from a flu vaccine. This is a personal preference and not a religious belief. As such, my analysis will focus on Article I, Section 1 as a basis for his claim.

7

Article I, Section 1 of the Pennsylvania Constitution is analogous to the Fourteenth Amendment of the federal constitution.[16] See, e.g., Harley v. Schuylkill County, 476 F.Supp. 191, 195 (E.D. Pa. Aug. 23, 1979); Robbins v. Cumberland Cnty. Children & Youth Servs., 802 A.2d 1239, 1251-52 (Pa. Cmwlth. 2002). Pennsylvania courts have held that the provisions in Article I of the Pennsylvania Constitution are only intended to limit state actors. See, e.g., Commonwealth by Shapp v. National Gettysburg Battlefield Tower, Inc., 311 A.2d 588, 592 (Pa. 1973) ("Article 1 is entitled 'Declaration of Rights' and all of the first twenty-six sections of Article 1 which state those specific rights, must be read as limiting the powers of government to interfere with the rights provided therein"); Murphy v. Harleysville Mut. Ins. Co., 422 A.2d 1097, 1104 (Pa. Super. 1980)(citing National Gettysburg Battlefield Tower, 311 A.2d at 592).

For this reason, Pennsylvania courts have declined to find a public policy exception for wrongful termination claims against non-state actors based on Article I of the Pennsylvania Constitution.[17] Consequently, courts in the Third Circuit hearing wrongful discharge diversity cases have adopted Pennsylvania's reasoning that violations of Article I provisions by private employers do not warrant a finding of wrongful discharge under the public policy exception. See Borse v. Piece Goods Shop, Inc., 963

---

[16] The Pennsylvania Supreme Court has found that Article I of the Pennsylvania Constitution is self-executing, that is, it requires no additional legislative action to provide a cause of action. Erdman v. Mitchell, 56 A. 327, 331 (Pa.1903).

[17] See, e.g., Booth v. McDonnell Douglas Truck Services, Inc., 585 A.2d 24, appeal denied, 528 Pa. 620, 597 A.2d 1150 (1991)(refusing to uphold a wrongful discharge action based on a Pennsylvania constitutional provision as a source of public policy for lack of state action); Cisco v. United Parcel Servs., Inc., 476 A.2d 1340, 1344 (Pa. Super. 1984)(declining to extend a wrongful discharge public policy exception based on Pennsylvania constitutional claim to a private employer); Martin v. Capital Cities Media, Inc., 511 A.2d 830 (Pa. Super. 1986)(declining to make employee's free speech right under the Pennsylvania Constitution a wrongful discharge public policy exception as applied to a private employer).

F.2d 611, 621 (3d Cir. 1992)("the right of privacy protected by the Pennsylvania Constitution does not encompass invasions of privacy committed by private actors")(citing Martin, 511 A.2d at 844 and Cisco, 476 A.2d at 1344); Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 113 (3d Cir. 2003). As such, precedent instructs that a claim like the plaintiff's, based solely on a state constitutional violation by a private employer, should not proceed.

Furthermore, public policy warranting an exception which is not legislatively enacted "must be extremely clear to be cognizable in this context; indeed acceptance must be virtually universal." [18] Fraser, 352 F.3d at 112 (discussing Shick v. Shirey, 716 A.2d 1231 (1998)); see also Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009)("Only in the clearest of cases may a court make public policy the basis of its decision."). The

---

[18] The source of a public policy exception may be broader than what is legislatively enacted, Shick v. Shirey, 716 A.2d 1231 (1998), and public policy may be derived from Pennsylvania case law, constitutional law, and statutory law. Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009). However, public policy exceptions are typically rooted in a statutory duty by the employee or employer to act in a particular manner. Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 111 (2003)(explaining that recognized public policy exceptions include:"[A]n employer (1) cannot require an employee to commit a crime [and fire the employee for refusing to do so], (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute.") (quoting Hennessy v. Santiago, 708 A.2d 1269, 1273 (Pa.Super.1998)).

When a Pennsylvania constitutional provision has been used in the public policy analysis to find an exception, a statutory duty, regulation, or code has also existed to warrant the employee's behavior. See Reuther v. Fowler & Williams, Inc., 386 A.2d 119 (Pa. Super. 1978)(finding a public exception for wrongful discharge based on the Pennsylvania Constitution's right to a trial by jury and a citizen's statutory duty to serve on a jury when called). See also Donahue v. Fed. Express Corp., 753 A.2d 238, 244 (Pa. Super. 2000)(declining to find a public policy exception for whistleblowing against a private employer when no legal duty to report the acts at issue exists); Weaver, 975 A.2d at 572 (declining to extend the public policy exception to private small business owners exempt under the PHRA on the basis of the Pennsylvania Constitution's Equal Rights Amendment); Spyridakis v. Riesling Group, Inc., Civ. A. No. 09–1545, 2009 WL 3209478, at *9 (E.D. Pa. Oct. 6, 2009)("in finding a wrongful termination based on public policy, courts in Pennsylvania have identified a specific statute or regulation that the termination threatened, not merely constitutional rights to expression or petition").

While the Third Circuit has found a public policy exception against a private employer based on Article I alone, it has since limited that finding to the facts of that case only, in accord with Pennsylvania common law. See Novosel v. Nationwide Ins. Co., 721 F.2d 894 (3d Cir. 1983); Fraser, 352 F.3d at 112-3 ("we have essentially limited Novosel to its facts—a firing based on forced political speech"—after recognizing that Pennsylvania courts have declined to rely on Article I as for public policy exceptions against non-state actors).

plaintiff's pleading that Pennsylvania public policy runs counter to a pharmacist administering flu shots—which are neither illegal nor have been universally proven to be unsafe—cannot be found in his invocation of the Pennsylvania Constitution Article I.[19]

For these reasons, I find no legal merit in plaintiff's claim based on the substantive case law.

### B. Res Judicata

Even if the plaintiff's complaint could proceed substantively, the plaintiff's new complaint would be procedurally barred based on the preclusion doctrine. *Res judicata* promotes judicial economy and protects defendants from having to defend multiple identical or nearly identical lawsuits by "bar[ring] not only claims that were brought in a previous action, but also claims that could have been brought." In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008). It applies when there exists "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." Id. (quoting Post v. Hartford Ins. Co., 501 F.3d 154, 169 (3d Cir. 2007)).

Prong one of the Mullarkey test requires a final judgment of claims that have been, or could have been, decided on the merits. Mullarkey, 536 F.3d at 225. For *res judicata* purposes, "denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action." McKenna v. City of

---

[19] This is not to say that the plaintiff's claim regarding wrongful discharge based on other sources of Pennsylvania law or policy would fail, only that Pennsylvania Constitution Article I alone does not provide a basis for the cause of action asserted in this complaint. See, e.g., Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 621, 626 (3d Cir. 1992)(finding that Pennsylvania Constitution Article I offered no basis for a public policy exception but other sources of law and policy may warrant an exception).

10

Philadelphia, 304 Fed. Appx. 89, 93 (3d Cir. Pa. 2008) (quoting Prof. Mgmt. Assocs. Inc. v. KPMG LLP, 345 F.3d 1030, 1031 (8th Cir. 2003)); Nat'l Pool Constr., Inc. Liquidating Trust v. Provident Bank, 2013 U.S. Dist. LEXIS 41688, at *16 (D.N.J. Mar. 25, 2013). Moreover, courts have held that the doctrine of *res judicata* applies regardless of whether or not the denial of leave to amend a pleading was based on the merits. Benckini v. Upper Saucon Twp., 2008 U.S. Dist. LEXIS 38723, at *17-18 (E.D. Pa. May 13, 2008) (citing Northern Assur. Co. of Am. v. Square D Co., 201 F.3d 84, 88 (2nd Cir. 2000) (explaining that such a holding is justified because "the actual decision denying leave to amend is no more than a proxy to signify at what point claims have been forfeited due to a plaintiff's failure to pursue all claims against a particular defendant in one suit.")).[20] Thereby, the denial of the plaintiff's motion to amend would be considered a final judgment satisfying prong one.[21]

In addition, there can be no dispute that the second and third prongs of the analysis are clearly fulfilled. The parties are identical, and the claim in the second action is

---

[20] In Benckini, the plaintiff had filed a new case with a number of identical allegations, which had been dismissed at various stages of the plaintiff's other actions. Specifically, the court had denied with prejudice Mr. Benckini's motion to amend his complaint to include constitutional claims relating to the same underlying transaction. As part of the basis for the ruling on the motion to amend, the court noted that the plaintiff had waited to file his motion to amend for nearly five months after the alleged events took place. The court determined that "on the basis of the doctrine of *res judicata*," denial of leave to amend in prior action "suffices to foreclose the proposed claim." Benckini, 2008 U.S. Dist. LEXIS 38723, at *17-18.

[21] The plaintiff argues that the denial of his motion to amend the complaint in Prewitt I was not a decision on the merits which results in the application of the preclusion doctrine. I disagree because this argument is unsupported by case law. See Benckini, 2008 U.S. Dist. LEXIS 38723, at *17-18. See also Banks v. Schutter, 2008 U.S. Dist. LEXIS 91430, at *13-14 (E.D. Pa. Nov. 6, 2008) (the denial of a motion to amend a complaint has been held to constitute a final judgment on the merits and thus would bar a relitigation of the same claim); Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 397-98 (4th Cir. 2006) ("denial of leave to amend constitutes *res judicata* on the merits of the claims which were the subject of the proposed amended pleading"); Poe v. John Deere Co., 695 F.2d 1103, 1107 (8th Cir. 1982) (citing Restatement (Second) of Judgments § 25, comment b (1982) ("[I]t is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late.")).

identical to the claim the plaintiff sought to amend in the first.  The allegations are based on the same underlying facts, all of which occurred at the time the plaintiff filed Prewitt I.  Thus, the plaintiff could have brought all of his claims in his original complaint, a fact to which the plaintiff agrees.

Furthermore, the plaintiff's second action is also impermissible "claim-splitting." "Claim-splitting" also known as the "rule against duplicative litigation [has been described as] the 'other action pending' facet of the *res judicata* doctrine."[22] Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., Civ. No. 08-309-JJF-LPS, 2009 WL 2016436, at *3 (D. Del. July 9, 2009).  The longstanding rule against improper claim splitting prohibits a plaintiff from prosecuting his case piecemeal and requires that all claims arising out of a single alleged wrong be presented in one action. Myers v. Colgate-Palmolive Co., 102 F. Supp.2d 1208, 1224 (D. Kan. 2000) (citing United States v. Haytian Republic, 154 U.S. 118, 125 (1894)).  Very often, the doctrine of claim splitting applies to bar a plaintiff from filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those claims.[23] See Northern Assurance Co.

---

[22] The rule has a lengthy history, being "settled" as early as 1876:

> It is undoubtedly a settled principle that a party seeking to enforce a claim, legal or equitable, must present to the court, either by pleadings or proofs, or both, all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand and prosecute it piecemeal, or present only a portion of the grounds upon which specific relief is sought, and leave the rest to be presented in a second suit, if the first fail.

Stark v. Starr, 94 U.S. 477, 485 (1876).

[23] In Walton v. Eaton Corp., 563 F.2d 66, 70 (3d Cir. 1977), the Third Circuit held that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court against the same defendant."  The court further explained that district courts should not allow plaintiffs to use the tactic of filing two similar lawsuits to expand the procedural rights to which they would have otherwise been entitled.  The Walton second suit involved a jury trial request, a different legal claim, and sought an additional type of damages.

of Am., 201 F.3d 84, 87-88 (2d Cir. 2000).  The preclusion of a claim not only prohibits a plaintiff from filing duplicative suits and from circumventing an earlier ruling of the court, it is in keeping with "the rule that a plaintiff must bring suit against the same defendant on all claims that relate to the same conduct, transaction or event at the same time."[24] Curtis v. Citibank, N.A., 226 F.3d 133, 139 (2d Cir. N.Y. 2000).

   As I have already denied the plaintiff's motion to amend, a motion for reconsideration was his only means to seek to bring his additional allegations before the court.[25]  The claims the plaintiff seeks to add were available to him at the time he filed his first complaint and nothing occurred thereafter which would enable him to avoid the necessary implications of the preclusion doctrines.[26]  Both claims rely on the same

---

The court directed that where a district court elects to consolidate two lawsuits, it "must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints. . . ."  Id.  Therefore, as Walton makes clear, a plaintiff seeking to raise new claims concerning the subject matter of an already existing suit against the same defendant may not file a substantively identical suit containing these new allegations.  Instead, the proper means for raising these new claims is by moving to amend the existing complaint.

[24] See Schneider v. United States, 301 F. App'x 187, 189 (3d Cir. 2008) (per curiam)(citing with approval Curtis v. Citibank, N.A., 226 F.3d 133 (2d Cir. 2000)). See also Leonard v. Stemtech Int'l, Inc., 2012 U.S. Dist. LEXIS 120525, at *26-27 (D. Del. Aug. 24, 2012) (stating that "very often the doctrine of claim-splitting applies to bar a plaintiff from filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those same claims," and  in such circumstances, the second-filed suit is often not permitted to go forward—not only to prevent plaintiffs from circumventing prior court orders, but also because such circumstances tend to suggest that the claims raised in the second suit could well have been pursued in the prior litigation.")(citing Curtis, 226 F.3d at 139); Dorsey v. Jacobson Holman PLLC, 764 F. Supp. 2d 209, 212 (D.D.C. 2011) (finding plaintiff to have engaged in claim-splitting and dismissing second action, in part because the claims in second suit "mirror[ed]" the substance of plaintiff's proposed Third Amended Complaint in first suit, which had been denied by district court); Levy v. City of New Carrollton, Civil Action No. DKC 09-2552, 2010 WL 3190876, at *3 (D. Md. Aug. 11, 2010) (finding second-filed action to amount to claim-splitting where plaintiff had "previously attempted to advance the allegations in the instant complaint in a motion to amend the complaint in a previous case" that was denied, which underscored that "[h]ad the allegations been timely asserted in the previous action, they could have been adjudicated").

[25] The court notes that the plaintiff did not file a motion to reconsider the ruling denying the plaintiff's motion to amend in Prewitt I.

[26]  This case is distinguishable from Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 329 F. Supp. 2d 574, 579-83 (D. Md. 2004) (dismissing, as examples of claim-splitting, allegations in the new complaint involving alleged breaches of the same contract at issue in a previously-filed suit against the same party, to the extent that those breaches arose out of the same operative facts as those at issue in the prior suit; but permitting the second suit to go

operative facts and legal principles and the duplicative claims were brought in the course of ongoing litigation of Prewitt I.

Further, allowing the plaintiff to assert this new action and consolidate the cases undermines the public policy behind *res judicata* and against "claim splitting."  The doctrines promote judicial economy by protecting defendants from having to defend against multiple identical, or nearly identical, lawsuits and by protecting courts from having to expend judicial resources on piecemeal litigation.  Morgan v. Covington Twp., 648 F.3d 172, 177 (3d Cir. Pa. 2011); Churchill v. Star Enters., 183 F.3d 184, 194 (3d Cir. Pa. 1999).  Additionally, the Third Circuit has strongly cautioned that a district court must

> carefully insure[] that the plaintiff does not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed. In particular, the court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints

for the purpose of circumventing the rules pertaining to the amendment of complaints, [Fed. R. Civ. P.] 15.  Walton, 563 F.2d at 71.

---

forward as to alleged breaches of the contract that occurred after filing of the most recently-filed complaint in the first suit) and Hutchins v. United Parcel Service, Inc., 197 F. App'x. 152, 159-60 (3d Cir. 2006) (affirming district court's dismissal of plaintiff's race discrimination claims in a second action—to the extent that they arose prior to the deadline to amend the complaint in the plaintiff's earlier-filed race discrimination action—while allowing such claims that arose after that deadline to proceed in the second action). The plaintiff's new complaint alleges a new source of law for his wrongful termination, not newly-discovered evidence of further claims.

See also Morgan v. Covington Twp., 648 F.3d 172, 177 (3d Cir. 2011) (citing Smith v. Potter, 513 F.3d 781, 783 (7th Cir. 2008) ("Res judicata does not bar a suit based on claims that accrue after a previous suit was filed…"); Mitchell v. City of Moore, 218 F.3d 1190, 1202-03 (10th Cir. 2000) ("[W]e agree with those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed."); Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369-70 (2d Cir. 1997)  ("For the purposes of *res judicata*, '[t]he scope of the litigation is framed by the complaint at the time it is filed.'") (citation omitted); Manning v. City of Auburn, 953 F.2d 1355, 1360 (11th Cir. 1992) ("[W]e do not believe that the *res judicata* preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation.").

In essence, the present motion is the plaintiff's second attempt to get all of his claims heard as part of the first action.[27] The plaintiff is not entitled to raise his public policy claim based upon Pennsylvania's Constitution in an entirely separate lawsuit merely because he disagrees with my decision.  See e.g., Dorsey v. Jacobson Holman PLLC, 764 F. Supp. 2d 209, 213 (D.D.C. 2010) (stating that "having been denied the right to amend the Dorsey I complaint," as a result of the plaintiff's undue delay, "does not grant [plaintiff] the right to file Dorsey II; she has "'no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'")(citing Walton v. Eaton Corp., 563 F.2d 66, 70 (3rd Cir. 1997)).

The claim in Prewitt II is based on facts known at the time Prewitt I was filed.  The filing of Prewitt II was simply an end-run around a prior denial of plaintiff's attempt to amend the complaint in Prewitt I.[28]  Allowing the case to proceed, or consolidating the two suits, would effectively allow the plaintiff to amend his complaint without satisfying the requirements of Federal Rule of Civil Procedure 15. The issues that the plaintiff contends occurred in this action could have been properly raised and litigated in Prewitt I but were not because the

---

[27] The plaintiff's own memorandum responding to the motion to dismiss this complaint incorporates by reference from Prewitt I the documents pertaining to plaintiff's motion for leave to amend, Docs. No. 29, 33, 35, and 36. Plaintiff's Response to Defendant's Motion to Dismiss Complaint, 12-cv-6967, Doc. No. 10. During a telephone conference, plaintiff's counsel stated that he would seek to consolidate the two cases pending a favorable resolution to the defendant's motion to dismiss.

[28] See Levy v. City of New Carrollton, 2009 U.S. Dist. LEXIS 127062 (D. Md. Mar. 17, 2009) (holding that plaintiff's new claims would have been heard if the plaintiffs had timely raised them and the plaintiffs could not avoid the consequences of their delay by filing a new action).

plaintiff failed to raise them in a timely manner. Furthermore, their inclusion would be significantly prejudicial to the defendant.

### V.     CONCLUSION

Thus, at this time both substantive and procedural law warrant dismissing this action.  For the reasons stated above, I will grant the defendant's motion to dismiss with prejudice.[29]

An appropriate Order follows.

---

[29] Given that I cannot find a substantive basis for allowing the second suit to proceed, I am dismissing plaintiff's suit with prejudice. See McKenna v. City of Philadelphia, 304 Fed. Appx. 89, 93 (3d Cir. Pa. 2008)(affirming the district court's dismissal of a duplicative suit based on the preclusion doctrine but indicating that the district court should have stayed the duplicative suit or dismissed without prejudice).